UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORMAND BEDFORD<br>(Petitioner) | * | |
| v. | * | C.A.No.05-095L |
| A.T. WALL, Director of the<br>R.I. Department of Corrections<br>ATTORNEY GENERAL FOR THE STATE<br>OF RHODE ISLAND<br>(Respondents) | * |  |

**PETITIONER'S OBJECTION TO U.S. MAGISTRATE JUDGE JACOB HAGOPIAN'S REPORT AND RECOMMENDATION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

Now comes Petitioner, Normand Bedford, in the above entitled matter and hereby, submits his "Objection to U.S. Magistrate Judge Jacob Hagopian's July 1, 2005 Report and Recommendation to dismiss Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C.A. §2254.

**Background**

On February 21, 2005, Petitioner filed with this Honorable United States Federal District Court a "Petition for Writ of Habeas Corpus" with Exhibits "A-I," from the R.I. Supreme Court's January 21, 2004, which should be January 21, 2005 Order denying Petitioner's "Omnibus Motion to Stay Appeal, Remand Case and File back to the Superior Court, and Appoint Counsel to correct 'illegal and void judgment of conviction and sentence."See Exhibit "A".

On March 29, 2005 this Court issued an Order for the Attorney General to provide a Reponse to the above noted petition.

On April 22, 2005 the Attorney General, by and through it's attorneys, filed a "Motion and Memorandum to Dismiss Petition.

On July 1, 2005 U.S. Magistrate Judge Jacob Hagopian issued a Report and Recommendation to dismiss Petitioner's Petition.

On July 5, 2005 Petitioner filed with this Court an "Affidavit of Complaint" alleging "retaliation, harrassment, and a 'corrupt endeavor' to impede any and all access to the Court," along with an abundance of evidence in support thereof.

On July 8, 2005 Petitioner filed with this Court a "Motion to Enlarge Time to file his Objection to the R+R of July 1, 2005.

## Discussion

First, Petitioner is under a completely "Illegal and Void Judgment of Conviction and Sentence," because he was denied closing arguments at trial, and denied counsel altogether, for his first motion for new trial, and sentencing hearings, notwithstanding his innocence. See enclosed transcripts of June 9, 1998; June 16, 1998; and June 25, 1998, as Exhibit "B", whereby, Court appointed attorney Neil Steingold refused to enter his appearance at the eleventh hour. The Court then ignored the original appointment of counsel and "forced the Petitioner to represent himself absent any waiver, and despite Petitioner's document-

ed 'mental and emotional disabilities.'" Petitioner further submits his July 10, 1998 transcripts of his first motion for new trial, and sentencing hearings, in partial form. See Id. [1] at page 397 whereby, Superior Court Justice states in part, that "He refused to enter, so the Court has attempted to provide you with counsel at that stage of the proceedings. Now, I'm suggesting that you are entitled to counsel at the next stage of your proceedings, that is appeal." Then the Court goes on to mislead the reader, that "I understand your argument, sir, and the reason why you didn't have any counsel is that this Court is satisfied, due to one-principally your own decision is not to do so, and that's-I've already ruled on that, Mr. Bedford." This deception and contradiction is supported by the aforementioned transcripts of June 9, 1998; June 16, 1998; and June 25, 1998, as Exhibit "B". This blatant denial of counsel at such a critical stage is the reason why Petitioner filed a "Motion to stay his appeal, remand papers back to the Superior Court, and appoint counsel to address this Constitutional error, which has never been heard before that Court. Rule 35 mandates that the Superior Court hear the matter prior to any appeal to the R.I. Supreme Court. Petitioner's "state corrective process" has undoubtedly, been denied. See Order of R.I. Supreme Court, as Exhibit "A".

Petitioner asserts that U.S. Magistrate Jacob Hagopian's July 1, 2005 Report and Recommendation **fails** to acknowledge



[1] **See Exhibit "G", page 397 of July 10, 1998 transcript.**

that "there is [either] an absence of available State corrective process *** or [the existence of] circumstances*** that render such process ineffective to protect [his] rights, 28 U.S.C. §22 54. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S.Ct. 1728, 1731 (1999). Petitioner cannot put the cart before the horse. He must address his Constitutional claims in the Superior Court before he can file any appeal of his "Illegal Judgment of Conviction and Sentence" to the R.I. Supreme Court. He has already been denied in the forum of the R.I. Supreme Court on that issue, and thats why he is rightly before this Court.

Moreover, Petitioner is still being denied relevant evidence in the form of **"thirteen pages of exhibits"** to his December 10, 2002 "Motion for New Trial based on Newly Discovered Evidence." Unfortunately, U.S. Magistrate Judge Hagopian **fails** to acknowledge the volumes of evidence in support of the withholding of 'twice' previously subpoenaed evidence. See enclosed as Exhibit "C", which is Petitioner's June 14, 2004 cover-letter to R.I. Supreme Court Chief Justice Frank Williams, requesting in paragraph 3 the **"thirteen pages of exhibits"** noted above. See attachments of letters dated February 17, 2004, requesting the same **"thirteen pages of exhibits"** being withheld deliberately. See also attached thereto, letter dated March 3, 2004 requesting the same **"thirteen pages of exhibits"** being withheld diliberately. See also attached thereto, Superior Court cover-letter dated January 2, 2003 filing the above

exhibits with the R.I. Supreme Court. Indeed, the State **refuses** to provide this Petitioner his exhibits relevant for his first appeal, constituting "Concealment of evidence." See **18 U.S.C.§1503.**

More importantly, Petitioner has been denied counsel for his first appeal as a matter of right. See enclosed as Exhibit "D", R.I. Supreme Court Order "denying counsel" dated March 18, 2004. Notably, the State and U.S. Magistate Judge Hagopian's R+R misconstrue the facts of the actual number of attorneys' appointed to Petitioner, as well as the disposition of latter withdrawals. The fact is, that "at least four of the attorneys listed in the record failed to **enter an appearance** in the Petitioner's behalf" therefore, cannot be included in the number. One being R.I. Supreme Court attorney Michael Devlin, who refused to **enter his appearance** at all. Neil Steingold was another, Mark Smith was another. Petitioner did submit substantive and meritorious complaints against several attorneys with the R.I. Supreme Court Disciplinary Commission, which would substantiate viable claims of alleged deception and misconduct on the part of those attorneys. Nevertheless, Petitioner is entitled to an attorney for his first appeal to the R.I. Supreme Court, but has been repeatedly, denied. Thus, Petitioner has exhausted his remedies within the State. See **Harris v. Kuhlman**, 601 F.Supp. 987 (1985); and **U.S. Ex Rel. Williams v. Washington**, 863 F.Supp 697 (N.D.Ill. 1994).

In further support of Petitioner's contention that he has "exhausted all available state corrective process," enunciated in **Keeney v. Tamayo-Reyes**, **504 U.S. 1,9 (1992);** also, **Picard v. Conner**, **404 U.S. 270, 276 (1971),** he submits the State's December 13, 2004 "Supplemental Response to Petitioner's Motion to Adjudge in Contempt," which states in pertinent part, that "The undersigned was this morning informed by the Rhode Island Superior Court Administrator's Office that there indeed **'exists a record of a June 25, 1998 proceeding'** involving the defendant in the above-captioned matter." See Exhibit "E", herein. See also, R.I. Supreme Court's Order dated June 4, 2004, as Exhibit "I", herein, requiring the State to provide Petitioner with the June 25, 1998 transcripts, which are enclosed herein, as Exhibit "B". These same transcripts were withheld form Petitioner for years. The same of which, caused in part, the unreasonable delay in Petitioner's first appeal of his 1998 conviction and sentence. Thus, violating his due process rights defined in **Harris v. Champion**, **15 F.3d 1538 (10th Cir. 1990); Odsen v. Moore, 445 F.2d 806 (1st Cir. 1971);** also, **Coe v. Thurman, 922 F.2d at 533.** See also, **Harris v. Kuhlman, 601 F.Supp. 987 (1985), 28 U.S.C.A. §2254; U.S.C.A. Const. Amend 6.**

More importantly, and **exclusively,** is the repeated submissions of Petitioner's **July 14, 2004 "Motion to Enlarge Time" to file an appellate brief on appeal to the R.I. Supreme Court and it's assoc-**

**iated exhibits thereto, A-D,** which is Petitioner's "Motion to Hold Docketing of Appeal in Abeyance" with it's cover-letter dated June 14, 2004, addressed to Mr. Michael Cafferty Jr., a motion that was never recorded by that Court. Next, is the Petitioner's **second "Motion to Enlarge Time of June 3, 2004,** with it's cover-letter dated June 21, 2004, addressed to Mr. Michael Cafferty Jr., a motion that was never recorded by that Court as well. The following exhibit "C" of that package also, reflects the verification of the June 25, 1998 "Video Court Proceeding" transcript that was withheld until December of 2004. The last exhibit "D" of that package is the July 10, 1998 partial transcripts, demonstrating violations of Petitioner's Sixth Amendment right to counsel for his sentencing and first motion for new trial, enunciated in **Johnson v. Zerbst, 304 U.S. 458 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); and U.S. v. Mateo, 950 F.2d 44 (1st Cir. 1991). Notably,** the July 14, 2004 **"Motion to Enlarge Time"** that was received **twice** by the R.I. Supreme Court, and **several times** by this Court, the same of which all parties continues to **ignore,** was, in fact, **hidden** and **obscure** when it was filed with the R.I. Supreme Court as a **"Letter with Exhibits."** See enclosed Docket History Report as Exhibit "F", Id. at 8-2-2004 filing. The same is true once again, for the "Motion to Hold Docketing in Abeyance" that was received by certified mail in the R.I. Supreme Court, but never recorded. All the aforementioned facts were filed within Petitioner's February 21, 2005 Petition in this matter of C.A. No. 05-095L, as well as prior Petitions under C.A.No.04-271L, and C.A.

No. 03-256T, therefore, if not for the longstanding and ongoing offences related to withholdings, misfilings, and abuse of process, then for the unreasonable delay in his first appeal this instant Petition should be granted. The State cannot deliberately withhold previously subpoenaed **exhibits** to the December 10, 2002 motion for new trial based on newly discovered evidence transcripts, withhold transcripts of a crucial proceeding related to the denial of counsel for Petitioner's first motion for new trial and sentencing, forcing him to represent himself without a waiver, as they did on July 10, 1998, until the erroneous **docketing of appeal**, as well as deny Petitioner adaquate counsel for appeal, and not be **solely** responsible for the delay in an appeal that is not even ripe for prosecution, because of the unadressed Constitutional claims in the forum of the Supeior Court. Instead the State and U.S. Magistrate Jacob Hagopian continue to mislead a fact finder that Petitioner **missed, ignored, or failed** to file a brief in an appeal that was held in abeyance. In fact, it's now those parties that are **ingoring** the evidence submitted in the enclosed July 14, 2004 **"Motion for Enlargement of Time,"** H and it's exhibits A-D. Furthermore, since the above is true, this Court clearly abused it's discretion in denying all prior Petitions for Writ of Habeas Corpus, in C.A.No.'s 04-271L; C.A.No.03-256T; as well as the ongoing "obstructions of the administration of justice" submitted in C.A.No.04-527L.

H Motion to Enlarge Time with Exh A-D dated July 14, 2004, See Exhibit "H"

The State cunningly, and deceivingly, claims in their Memorandum in Support of it's Motion to Dismiss Petition, dated April 22, 2005, Id. at p.2, that they "can barely comprehend" the factual allegations of Petitioner's claims of "misfilings, deliberate withholding of "relevant" "exhibits" notwithstanding, the malicious treatment that Petitioner continues to sustain within the R.I. Department of Corrections Maximum Security Facility in a "corrupt endeavor" to Obstruct the administration of justice in violation of federal law, Sections 1503; Sec. 1702, and Section 1983; and Sec. 7:56 of 42 U.S.C. These claims have been expressed at length in Petitioner's Petition under C.A.No. 04-527L, claims that the State is well aware of, because of their unlawful orchestration of events through the infiltration of the R.I. Department of Corrections Administrations Medium and now Maximum Security Facilities for the past several years. Affidavit after Affidavit has been filed with this Court, but again, U.S. Magistrate continues to play "prosecutorial advocate" and **ignore volumes** and **volumes** and **volumes of evidence.** Petitioner has repeated himself over and over again, and the State and U.S. Magistrate Jacob Hagopian continue to refute with lies and misleading memoranda which they "dare not" file a rebuttal Affidavit with in light of the preponderance of the evidence in favor of Petitioner.

To further defend his position, Petitioner has not had ten or eleven attorneys that he failed to cooperate with, but instead, at least three or four of those attorneys **"refused to enter their appearance"** after being appointed. Another one of the appointments namely, attorney Donna Uhlmann, is and has been for years, a well known "crack head" which the R.I. Bar should be ashamed to have on board. Several others were clearly "deficient in performance" which can be substantiated from the substantive "ethics complaints" filed against them with David Curtin. The last two attorneys appointed in the R.I. Supreme Court for an unripe appeal, one of those namely, Mr. Michael Devlin, **refused to enter his appearance**, leaving the last attorney Mr. Richard Corley to attempt to deceive Petitioner through depriving him of due process, failing to obtain the remaining June 25, 1998 transcripts, that Petitioner finally, procurred in December of 2004, and lastly, attempted to file an appeal without preserving the serious Constitutional violations that have gone unaddressed thus far, because the R.I. Supreme Court fails to abide by Rule 35 of the Superior Court Rules of Criminal Procedure, as it relates to the denial of counsel for closing argument,'denial of counsel for Petitioner's first motion for new trial, and denial of counsel for sentencing. See **Johnson v. Zerbst**, **304 U.S. 458 S.Ct. 1019, 82 L.Ed 1461 (1938); U.S. v. Mateo**, **950 F.2d 44 (1st Cir. 1991)**; See also, **Farretta v. California**, U.S. 95 2525, whereby,

a person should be made aware of the dangers and disadvantages of self-representation. This leading case is relevant, notwithstanding the fact that Petitioner never waived his right to counsel at his first motion for new trial and sentencing, and notwithstanding the conspiracy to deprive him of counsel at such critical stages on July 10, 1998, where the enclosed transcripts of June 9, 1998; June 16, 1998; and June 25, 1998, prove that another Superior Court Justice, no less, appointed and even affirmed that a Mr. Neil Steingold had **"entered his appearance"** when in fact, he had not, and later **refused to enter.** The State and the U.S. Magistrate Jacob Hagopian has repeatedly smeared over this fact, and even assert repeatedly that Petitioner's "first motion for new trial" was <u>denied</u>, but <u>fail</u> to reflect the serious allegations stemming from the same denial of counsel for those proceedings, pursuant to **<u>Farretta v. California</u>, U.S. 95 2525** In fact, the enclosed transcript (or partial transcripts) of the July 10, 1998 proceedings as <u>Exhibit "G"</u>, herein, and mentioned on page 3 of this memorandum, reflect, Justice Clifton misleading a fact finder that "Petitioner chose to represent himself at that time." Specifically, as stated on page 2 and 3 herein, Justice Clifton ignored Petitioner's repeated requests for counsel, and ignored his declarations of his documented mental and emotional illness, before forcing him to represent himself. On page 397 of the enclosed partial transcripts of only a few pages, Justice Clifton states in pertinent part, that **"He refused to enter, so**

**the Court has 'attempted to provide you with counsel' at that stage of the proceedings. (July 10, 1998), emphasis added. Now, I'm suggesting that you are entitled to counsel at the next stage of your proceedings, 'that is appeal.'** If Justice Clifton thinks that the word "attempted" satisfies the Sixth Amendment Constitutional right to counsel enunciated in **Farretta v. California**, U.S. 95, 2525; and **U.S. v. Mateo**, 950 F.2d 44 (1st Cir. 1991), then he is sadly mistaken. In light of Petitioner being denied **"Closing arguments"** at the close of his trial in May of 1998, just two months before Justice Clifton deprived him of counsel at his first motion for new trial and sentencing hearings, it can reasonably be inferred that Providence Superior Court Justice Edward C. Clifton, was biased, prejudiced and contemptuous against this Petitioner infringing on the most fundamental Constitutional rights of a "disabled individual" who was convicted and sentenced by the "purchased" and "illegally induced" testimony of two key witnesses who were paid sixty-five hundred dollars ($6500.00), just one month before trial, an inducement and/or reward that the State and the Court was well aware of in light of the Crime Victim Compensation Fund's "time stamp" on the face of a "Victim Impact Statement" attached as an exhibit to Petitioner' Pre-Sentence Report. Notably, the Court and the State denied any foreknowledge or participation in that award of a thing of value. See U.S. v. Russell, 411 US 423 (1973); also Lerner v. Moran, 542 A.2d 1089 (R.I.1998). Notably, this is why the State refuses to

provide this Petitioner with his **"thirteen pages of exhibits" that are attached and associated to his December 10, 2002 transcripts of his motion for new trial based on newly discovered evidence involving the illegal inducement of key witnesses before trial.** This highly imperative and relevant evidence is the same of which, the State in their Memorandum in Support of it's Motion to Dismiss Petitioner's Application For a Writ [2] of Habeas Corpus, deceiptfully, claim that they **"can barely comprehend"** Id. at page 2 of State's April 22, 2005. This Petitioner "doesn't believe" the State's ingnorance, nor should this Honorable Court. See Exhibit "C" herein, for verification of this contention.

## Conclusion

For all the aforementioned reasons, Petitioner respectfully requests that his instant Petition for Writ of Habeas Corpus be granted, ordering the immediate release of Petitioner from State custody within the Rhode Island Department of Corrections Maximum Security Facility. Petitioner is entitled to immediate relief on the grounds of an unreasonable and inordinate delay of a first appeal of an otherwise illegal and void judgment of conviction and sentence of almost **eithty-four months**, notwithstanding his numerous other Constitutionally infirm claims. See **Harris v. Champion**, 15 F.3d 1538 (10th Cir. 1990); also **Coe v. Thurman**, 922 F.2d 533.



[2] **See Exhibit "I", State's Memorandum.**

Furthermore, the State was given "one full opportunity to resolve any constitutional issues" through "one complete round of the State's established appellate review process" as it relates to Petitioner's June 14, 2004 "Motion to Stay Appeal, Remand Case and File back to the Providence County Superior Court, and appoint counsel to represent his 'never before addressed' 'illegal and void judgment of conviction and sentence of 1998,'" pursuant to the general rule of procedure, enunciated in Rule 35 of the Superior Court Rules of Criminal Procedure. Thus, when the R.I. Supreme Court denied the above noted motion to stay, they in essence waived their right to provide this Petitioner with his long over-due "state corrective process." Therefore, it is hereby, prayed that the instant Petition be granted.

Petitioner submits the attached "Affidavit of Complaint" dated July 5, 2005, which is a second original copy of one that was already filed with this case number 05-095L, in support of this Objection to U.S. Magistrate Jacob Hagopian's July 1, 2005 Report and Recommendation to Dismiss Petition.

Inventory to Exhibit A-I, to Petitioner's Objection to U.S. Magistrate Jacob Hagopian's July 1, 2005 Report and Recommendation to Dismiss Petition

Exhibit "A" Rhode Island Supreme Court's January 21, 2004, which should be January 21, 2005 Order denying Petitioner's "Omnibus Motion to Stay Appeal, Remand Case and File back to the Providence Superior Court, and Appoint Counsel to represent a 1998 illegal and void judgment of conviction.

Exhibit "B" Providence Superior Court's transcripts of June 9, 1998; June 16, 1998; and June 25, 1998, in relationship to the "Determination of Attorney," leading up to the July 10, 1998 "illegal and void judgment of conviction and sentence on Sixth Amendment violation of the United States Constitution. January 2, 2003 cover-letter of Superior Ct.

Exhibit "C" Petitioner's June 14, 2004 correspondence to the Rhode Island Supreme Court with it's attache letters, dated February 17, 2004, and March 3, 2004, requesting **"13 pages of exhibits to the December 10, 2002 transcripts for appeal to a Motion for New Trial Based on Newly Discovered Evidence.**

Exhibit "D" R.I. Supreme Court Order dated March 18, 2004, denying Petitioner's "Motion for Reconsideration of Motion to Appoint Counsel for Appeal."

Exhibit "E" State's Supplemental Response to Petitioner's Motion to Adjudge in Contempt. State's motion, dated December 13, 2004.

Exhibit "F" Rhode Island Supreme Court Docket History Report dated August 13, 2004. **Note: See 8-2-2004 filing of "Letter with Exhibits" which is "concealed evidence" of "Petitioner's crucial Motion to Enlarge Time to File brief on appeal." Again, the 8-2-2004 filing is actually the hidden "Motion to Enlarge Time to File brief on appeal, giving exclusive rise to "misconceptions of material facts" in Petitioner's Petition for Writ of Habeas Corpus dated February 21, 2005, in the U.S. Federal District Court, C.A. No.05-095L. Confer with page 6 and 7 of attached Memorandum, as well as prior**

Petition for Writ of Habeas Corpus filing of Supplemental Memorandums' in C.A. No.04-271L, demonstrating the same "concealment of evidence" in violation of 18 U.S.C. §1503, as it relates to misconceptions of material facts involving past and present petitions for relief in U.S. Federal District Court, virtually, obstructing justice in violation of 18 U.S.C. §1503, and §1702.

Exhibit "G" Providence Superior Court transcript pages 332, 333, 396, 397, with cover-page and certification page dated May 19, 1998, before Justice Clifton. **Note: See specificaly, page 397, whereby, the Court 'misleads a fact finder' that Petitioner chose to represent himself, when in fact, Petitioner was appointed counsel on June 9, 1998, and was 'manipulated, compelled and forced to represent himself, without a waiver,' or being warned of the 'dangers and disadvantages of self representation,' defined in <u>Faretta v. California</u>, U.S. 95, 2525; and <u>U.S. v. Mateo</u>, 950 F.2d 44 (1st Cir. 1991), because the Court was made aware of Petitioner's 'mental and emotional illnesses' and his being on 'mind altering drugs.' This not only transpired because attorney Neil Steingold, who was appointed on June 9, 1998, "refused to enter his appearance" at the eleventh hour, but also, as a result of conspiracy, as evinced from page 333 of enclosed transcript of "Chamber conference".**

Exhibit "H" Providence Superior Court (partial transcripts) of pages 332, 333, 396, and 397. Specifically, the last page 397 depicts (misleading remards by Justice Clifton, regarding "denial of counsel" whereby, he leads the reader and/or fact-finder to believe that Petitioner "chose" to represent himself, when in truth, Petitioner was manipulated, and forced, against his will, and actually, walked and talked through the proceeding, thus violating his rights.

Exhibit "I" Rhode Island Supreme Court June 4, 2004 Order, commanding, and ordering the State to produce, and provide Petitioner with his June 25, 1998 transcripts, that were withheld until December of 2004.

Supplemental Exhibits to Objection to U.S. Magistrate Judge Jacob Hagopian's July 1, 2005 Report and Recommendation to Dismiss Petition for Writ of Habeas Corpus

Summary

Enclosed within this Supplemental Exhibit is the State's July 18, 2003 "Objection to Petition for Removal" filed by the Petitioner with the U.S. Federal District Court. **Notably,** the 'footnote' as 1 states in pertinent part, that **"A previous motion for new trial had been heard and denied by Justice Clifton on July 10, 1998.** Interestingly, the State does not ellaborate that Petitioner was forced against his will and judgment to "attempt" to defend himself at such a critical stage, as well as his sentencing hearing which also was heard on July 10, 1998 without the benefit of counsel.

Next, is the enclosed State's Memorandum in Opposition to Defendant's Petition for Writ of Certiorari to the R.I. Supreme Court, dated June 18, 1999. **Notably,** this document does reflect the State's "deception and conspiracy to obstruct the administration of justice" by leading, or misleading a fact finder to believe that Petitioner/Defendant represented himself, leading to the denial of his first motion for new trial on July 10, 1998, because the State asserted the erroneous contention that " His motion for new, argued pro se due to petitioner's inability to retain any number of attorneys assigned to him, was denied on July 10, 1998." Notice the misleading and erroneous reason the State gives for the "pro se" representation, **"due to petitioner's inability to retain any number of attorneys assigned to him."** Petitioner's attached "Objection to U.S. Magistrate Judge Hagopian's R+R" in conjunction with the above facts, support "conspiracy to obstruct the administration of justice" in violation of 18 U.S.C.

§1503, as well as "malicious prosecution and abuse of process," in violation of 42 U.S.C. §1983, and §7:56. The real reason that Petitioner did not have counsel at the July 10, 1998 first motion for new trial and sentencing hearings is demonstrated in the enclosed Exhibit "B", of "Objection to July 1, 2005 R+R" Id. at June 25, 1998 transcripts, June 9, 1998 transcripts and June 16, 1998 transcripts, whereby, Petitioner was granted his motion for appointment of counsel for the July 10, 1998 proceedings, before "appointed counsel Neil Steingold, cunningly, **refused to enter his appearacne,**" because he needed a four month extension of time to prepare for Petitioner's defense. This was because the trial transcripts were not yet ordered or produced. In short, a proff-essional college trained attorney could not properly defend his client without seeing or reviewing the trial transcripts, but Justice Clifton believed that a "mentally disabled" person on pre-scription drugs "could" represent himself, as he forced Petition-er to do. The real issue was that Justice Clifton was biased, prejudiced, hostile, manipulative, and contemptuous against the Petitioner and was bent on exacting his own form of justice, known as "injustice." The evidence submitted to the United States Federal District Court over the years proves fatal for the State.

The last Supplemental Exhibit is correspondence dated October 26, 1999, from appointed attorney Stephen T. Morrissey. Notice in the first paragraph, whereby, it states that "**I have completed review of the trial transcript and it appears that the Motion for New Trial was in fact denied by Mr. Justice Clifton on July 10, 1998.** This was his way of concurring with the Court that it was ok to violate Petitioner's rights pursuant to the Sixth Amendment to the United States Constitution.

**Respectfully submitted**

**Dated: July 14, 2005**

Normand Bedford

**Normand Bedford (pro se)**