UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORMAND BEDFORD (Petitioner)

v.

C.A.No. 05-095L;and
C.A.No. 05-111S

A.T. WALL, Director of the R.I. Dept. of Corrections, et al. (Respondents)

**PETITIONER'S AFFIDAVIT OF COMPLAINT**

**I, Affiant/Complainant, Normand Bedford, hereby depose and say:**

That on May 2, 2005 I was retaliated against by numerous Correctional Staff within the Rhode Island Department of Corrections Maximum Security Facility. Initially, Deputy A. Kettle, and Deputy Stephen Boyd, were the primary sources. After being assigned to investigate my Level-2 Grievance for "Denial of full and fair access to my legal material in storage," Deputy Kettle was alerted by Chief Grievance Coordinator, Mr. Robert McCutcheon, that I had mailed a copy of my Grievance to a family member who later forwarded the same to the Staff of the Director. That gave rise to Deputy Kettle's retaliatory action, in that he ordered me to be segregated on May 2, 2005 followed by a booking that alleged "failing to comply with mail procedure," simply because my family member had mailed an additional copy of my Grievance after numerous discoveries of "mail theft, and mail tampering" within the DOC facility. The original was mailed by me through interdepartmental mail. Incidently, Deputy Mathew Kettle felt compelled to retaliate against me for naming several Superior Officers' in my Level-1[3] Grievance, for their failure to acknowledge or even sign both Level-1

[3] **See enclosed Level-1 and Level-2 Grievance with four page summary dated March 30, 2005.**

and Level-2 Grievances. Also, retaliatory action was taken while my Level-2 Grievance was still pending. Notably, Deputy Kettle later sent me an unreasonable and unexceptable resolution, notably, dated the same day I was halled off to segregation.

Additionally, Deputy Steven Boyd, also, played a role in the retaliation. After a call was made to him by nurse David Piccarillo, regarding "medically ordered boots," Mr. Piccarillo, was instructed to book me for allegedly, "giving false information." This was more than a misunderstanding of a prior conversation with myself, and Mr. Piccarillo, but "clear retaliation." [1]

Moreover, a host of events continued to transpire, from the date of May 2, 2005, until the date of my release from segregation on June 6, 2005. First, I was denied Grievance Forms, all my legal work for my active litigation, legal forms from the law library, a request to speak with Internal Affairs, request for legal supplies and further deprived of my medications for days.

I was assaulted in a segregation cell by an inmate named John Carlos, who threw a cup of urine from his cell window, into my cell, which doused my shirt. This was done after the inmate pryed the locked trap on his window. Five minutes later, I reported the incident to Officer Morrissette. Ten minutes later, John Carlos, tampered with the locked trap door and threw a second cup of urine in at me. When I contacted SIU Investigator William Bagonus, I requested to file criminal charges against John Carlos. Mr. Bagonus, stated, "Ok, thats fine, but later avoided and ignored that request." This constitutes "obstruction of justice" in violation of my civil rights.

[1] **See enclosed Petitioner's Memorandum in Support of the attached Motion for Executive Order at Page 6, averment 10, naming "nurse David Piccarillo."**

Additionally, on June 6, 2005, I was released from segregation and assigned to Prudence II, second tier. Later that evening I was taken back to segregation after I sent out a personal and legal letter to my family with a false return address, in light of numerous discoveries of mail theft and mail tampering. I was later booked by Lt. Traverse, for allegedly, "failing to comply with mail procedure."

More importantly, I was placed behind the hospital in the HS Segregation Ward. However, I was placed two doors down from John Carlos, who assaulted me with urine previously, and who afterwards, persisted to threaten, harass and taunt me. I was compelled to file more requests to SIU Investigator Bagonus.[4] I was later interviewed by Investigator Steven Cabral, which resulted in inmate John Carlos being moved out of HS Segregation Ward. It was later learned that John Carlos is no longer in the system, according to Investigator Cabral.

On June 27, 2005, I was released from HS Segregation and assigned to Prudence II Cell number 90 on the flats. That same afternoon I was threatened by an inmate housed in the same block. After reporting the name of the individual who threatened me, I was the only one locked in on LFI Status, which is known as "locked and fed in." After two days I was brought to the Investigator' who I explained the entire incident at legth. However, I requested to dismiss any action against the inmate, because the inmate who threatened me later came and squashed his vendetta with me, and specifically, asked me not to mention his name. It was agreed by Mr. Cabral (SIU), to keep discretion, however, he stated, "One of you are moving." This was said, because I stated to him that I shouldn't be in Prudence II Block in light of repeated threats by

[4] **See enclosed futile requests that were duplicated befored filing.**

a host of inmates that had been released from segregation and placed in the same Housing Unit. These inmates were extremely hostile after I reported inmate John Carlos, for assaulting me with cups of urine.

What is troubling, is the fact that immediately after I was removed from LFI Status, I was moved from the flats to the second tier, in harms way, and in the worst possible cell that an inmate with social problems could be housed in. The reason, the cell number 34, is directly at the bottom of the stairs. Every inmate from the third tier, who are predominantly B-Status inmates, and the majority of which I had severe conflict issues with, are passing by my cell countless times a day. Within 24hrs. of my being housed in cell 34, after returning from church service I discovered spit on my sheet. I reported the incident to Correction Officer DeBritto immediately.

The following morning I informed the bidding Officer of day shift, who runs the block, that "I need to be moved out of that cell promptly." He signed my requests slips involving the latest incident with the spit. The Officer, C/O Stockler, stated, "I'm not moving you, because I didn't put you there." This treatment is "cruel and unusual punishment," because C/O Stockler is no stranger to my serious social problems.

More troubling, is that the inmate who threatened me in the mod, on June 27, 2005, was moved out at the same time that I was moved off the flats, which virtually, alerted him that he was reported to SIU, an issue that myself and Investigator Cabral had agreed would be kept quiet. Also, Investigator Cabral and myself, had discussed my being moved to the other side of the compound, namely, Hope 1 Block, to get away from all my conflicts. Again, I

had informed Investigator Cabral, that "I am in a combat zone," namely, Prudence II where all my enemies are housed.

Also, while in segregation, after the assault by inmate John Carlos, and after repeated threats of serious bodily harm, I requested to be placed in "Protective custody." I was told by Captain Ashton, that "there is no protective custody here." When I mentioned the same to Investigator Cabral on June 29, 2005 he also, stated that "We are not going to place you in protective custody." Instead, I was put out on the front lines to suffer the fallout from the major conflict I suffered in segregation, by being placed in front of the stair-case to the top tier, where someone has already spit on my bed sheets, which can't be washed until the middle of next week, because I am only issued two sets. This is a serious health concern.

There are a host of seperate incidents that I could ellaborate on in support of my viable claims of "harrassment, intimidation, and retaliation by R.I. Department of Corrections Officials at every level, however, there are so many I can only begin with the most serious. The motive behind the aforementioned claims are the result of pending litigation in the U.S. Federal District Court,[5] related to "obstruction of justice, theft of personal funds from my inmate account by State Officials," and my challenge to a 1998 "illegal conviction and sentence" involving conspiracy and obstruction of justice as well.

Deputy Kettle was the first to initiate this round of attack, presumably, because I filed a Grievance Complaint that involved him at the Medium Security Facility on February 13, 2004, with a response to that Grievance at Level-2 provided sometime after the date of it's receipt on February 13, 2004. Notably, the Grievance[2] was wrongly denied, which stated in part, "Mr. Bedford, your property was packed under the direct supervision of correctional staff.

[2] See enclosed Grievance at page 2 Level-2.

[5] See enclosed Affidavit of Complaint dated Oct.18,04.

Staff reported that all of your property was properly secured. In addition, they stated that you informed staff that your property was missing the day prior to you being shipped to segregation." This was apparantly, the erroneous and false report of then, Captain Kettle, now Deputy Kettle, who I made a statement to while being taken to segregation by him at the Medium Security. However, my Grievance enclosed herein, with the date of February 13, 2004, up in the right hand corner contradicts the final resolution. Note, on page two of the Grievance, in the first paragraph, it states in pertinent part, "I also reported to Captain Kettle and Officer Deluca immediately upon my arrival to segregation, that 'inmate William Fleet stole an unopened package of sandwich creme cookies, and an unopened box of peanut brittle the night before.' This was the reason I alerted Captain Kettle and Officer Deluca of the potential threat of being robbed again. This again, was prior to exiting the bravo right block enroute to segregation." My point is that the two items that are mentioned above as stolen are only a fraction of the items listed and attached to the Grievance enclosed, which total ninety-one dollars and forty-one cents ($91.41). As far as the watch that was mentioned in the Grievance resolution, the segreagation officer was reponsible for the theft of that watch, and noted on an inventory sheet of mine that "I was in possession of a watch upon commitment to segregation," but a Lt. Desousa Rosa altered my commitment inventory sheet and conspired to take me to segregation for allegedly, "giving false information." The watch later turned back up on my computer printed inventory list. I later discovered that the segregation porter had to be the one who stole the watch, because it was found on an inmate in his block. The Officer who recovered the watch never booked the inmate for possession of the stolen watch. Nevertheless, it does not negate the responsibility or negligence of the theft, in light of the conspiracy to cover-up the theft by Corrections Officials, supported by a substancial

Grievance Complaint against then, Lt. DeSousa Rosa. The DOC has those records. Examine the facts for yourself. There is no history of frivilous Grievance filings by me, instead a history of "conspiracy, obstruction of justice, computer fraud, mail theft, mail tampering, retaliation against critics, which all stem from a 'corrupt endeavor' to obstruct the administration of justice, and impede and even stop all litigation against the R.I. Department of Corrections and the State's illegal conviction and sentence against me."

I have had to stop all litigation and abort several appeals to the U.S. First Circuit Court of Appeals in Boston, because of federal criminal activity involving Corrections Officials at the Medium and Maximum Security Facilities.

Finally, Deputy Mathew A. Kettle, is now attempting to deprive me of a Level-2 appeal, regarding his biased and unexceptable May 2, 2005 resolution of a prior Level-2 Grievance pertaining to the denial of "full and fair access to my legal evidence and material in a locked storage." He even resorted to threatening me with forcing me to send out all my legal material evidence, which would constitute "tampering with evidence" in violation of federal law.

My request for resolution, is that these offenses must stop. My mental and emotional health are in grave distress. Even the medical department are involved in the conspiracy to torment me. Again, with a proper federal investigation, which is warranted, these claims can all be substantiated. However, there is no "oversight for these criminals."

I have enclosed numerous request forms that were duplicated because there is no carbon copy for an inmates receipt. But, the words and requests were written verbatim. I did not reach the high chain of command, or even attempt to because all my requests were

ignored for a period of one month, with the exception of a few. Furtheremore, with the greater majority of Superior Staff being "one" and a "brotherhood" and with retaliation coming from the top dogs, it is futile to motivate anyone to protect my rights. I can no longer get letters out to a law firm or my family. In fact, Officer Justin Amaral, stated to me on June 29, 2005, stating, "Did we break you yet"? "Oh, we'll break you." Without saying, the R.I. Department of Corrections Officials have made it abundantly clear that they are going to make my life a living hell as long as I continue to litigate my claims in the Courts.

As stated previously, I have had to abort several appeals to the United States First Circuit Court of Appeals because of a total "denial of access to the Court" through depriving me of any and all legal material in segregation, as well as "denial of legal supplies" because the DOC claims I am not indigent because I refused to accept a fifty-cent a day job in light of my legal "mental and emotional disabilities" and "sever social problems" with just about the entire prison population, supported by extens- documentation and administrative reports. Enclosed are two motions that were filed in the U.S. Court of Appeals. One is dated May 16, 2005 as a "Motion to Stay Appeal," and the other dated June 14, 20-05 as a "Motion for Leave to Withdraw Pending Appeal Without Prejudice," Case No.05-1612.

Also enclosed herein, is my "Disciplinary Reports and my Appeals to the Warden," dated May 3, 2005. Notably, the two bookings were filed one day after each other, being April 28, 2005, and the other April 29, 2005, See Decisions of Warden's Review, dated May 9, 2005 enclosed. Interestingly, the "nurses" booking was ordered by Deputy Steven Boyd, and the other booking was by Deputy Mathew A. Kettle himself, before he ever issued a resolution of my Level-2 Grievance that the booking stemmed from. See also my enclosed letter to Deputy Boyd, dated March 17, 2005, with the

R.I. Department of Corrections "foot doctor's" signed "special needs form" approving the issuance of "medically needed boots." The same of which are still being unlawfully denied several months later. In fact, it was in addressing the above noted problem with Deputy Steven Boyd, that later gave rise to his retaliatory action against me when he instructed "nurse" David Piccarrillo, to book me for allegedly giving false information, when, in fact, it was David Picarrillo acting on the order of Deputy Boyd. See enclosed "booking reports" of both Deputy Kettle, and Mr. Picarrillo, as well as the two (2) "disciplinary appeal" hand written and duplicated before filing. Also enclosed is the Warden's review of denials.

I have also enclosed numerous "miscellaneous" documents in support of my "mail tampering" and "mail theft" allegations. See U.S. Court of Appeals for the First Circuit Court Docket History Report dated March 8, 2005. Id. at page 5 "filing date of 12/22/04 as "PUBLIC NOTE:" **This court has not received any pleading entitled, Certificate of Appealability. (dona) [04-2604]. Compare with enclosed January 28, 2005 Motion and Memo to Stay Appeal, Id. on page 2 of 6, in averment 5, describing the filing of the "Certificate of Appealability" that the Court did not receive.** See also U.S. Federal District Court Docket History Report Civil Docket for Case No.04-CV-527L. See date 3/31/05, as REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE JACOB HAGOPIANS REPORT. SEE ALL FILINGS AFTER THAT. Compare with my two (2) letters dated June 6, 2005, addressed to the U.S. Federal District Court, **enclosed herein**, refiling my **Objection to R+R**, as well as a **Rebuttal Memorandum**, that apparently was not received by the U.S. District Court. See also "money transfer receipt" enclosed dated 4-26-05, demonstrating the filing of above **Objection. Also, see cost of mailing. Note: I did not forward the above by certified mail. There appears also, to be two (2) cost listings. One at 2.21 and the other 7.15.** There has been a history of the same types of "foul play" and "absent filings" in the record. Mail tampering and mail theft are evident.

I, Affiant/Petitioner, Normand Bedford, hereby, depose and say under the penalty of perjury, that the aforementioned allegations, assertions and declarations within the body of the Affidavit of Complaint and Exhibits listed in keynotes, are true, correct and complete, not misleading, the truth, the whole truth, and nothing but the truth so help me God.

**Respectfully submitted**

Normand Bedford

**Normand Bedford (Pro se)**
**P.O. Box 8273**
**Cranston, RI 02920**

**Subscribed and sworn before me in Cranston, Rhode Island, the County of** Providence **in the State of Rhode Island and Providence Plantations, this** 8th **day of** July **, 2005**

**Date:** 7/8 **, 2005.**

**Clerk/Notary Public**

**Certification**

I, the undersigned hereby, certify, that I, caused a true copy of the within Affidavit of Complaint, with it's attached exhibits, to be mailed, this 5th day of **July** 2005 through interdepartmental mail, to: Patricia A. Coyne-Fague Esquire, Chief Legal Counsel, R.I. Department of Corrections, 40 Howard Avenue Cranston, RI 02930; Mr. John Lopez, Internal Affairs Division, Intake Service Center, P.O. Box 8249 Cranston, R.I. 02920, hand delivered at the Maximum Security Facility; Mr. Aaron L. Weisman Esquire, R.I. Attorney General's Office, 150 South Main Street, Providence, R.I. 02903.

Normand Bedford

Normand Bedford (Pro se)
P.O. Box 8273
Cranston, RI 02920

# Inventory List of Enclosures
# To Affidavit Of Complaint Dated July 5, 2005

1. Two individual letters addressed to the U.S. Federal District Court regarding the refiling of Memorandums' "previously, not received."

2. Level-2 Grievance dated 2-12-2004 being five pages along with miscellaneous attachments and inventory sheets dated 11-16-2001: 5-13-2002; 10-1-2002; 4-18-2003; and 6-3-2004, reflecting possession of watch, as well as inventory of property reported stolen. Also, "foul play" in the alteration of "Inventory Sheet" elleviating the above noted watch.

3. Level-1 Grievance dated 3-25-2005 with additional 3-pages reflecting "harrassment, retaliation,"and "denial of access to the Courts."

4. Level-2 Grievance dated 3-29-2005 with 4-page summary of "harrassment, and retaliation claims."

5. October 18, 2004 cover-letter with 6-page Affidavit of Complaint filed with the U.S. Federal District Court, addressing "Obstruction of justice, tampering with a witness, and Obstruction of correspondence."

6. Level-2 Grievance dated 6-29-2005 with Deputy Kettle's 5-2-2005 Resolution to prior Level-2 Grievance.

7. March 17, 2005 correspondence to Deputy Boyd, with "Medical needs Form" for "medically needed boots."

8. Booking Report dated 5-3-2005 with Disciplinary Appeal dated 5-6-2005, and Disciplinary Appeal Decision dated 5-9-2005.

9. Booking Report dated 5-6-2005 with Disciplinary Appeal dated 5-6-2005, and Disciplinary Appeal Decision dated 5-9-2005. Note: See 5-6-2005 Report of "Plea," and contrast it with Bedford's 5-6-2005 Appeal, where it correctly clarifies that "I plead not guilty at every stage."

10. Booking Report dated 6-10-2005 with Disciplinary Appeal dated 6-10-2005 with Disciplinary Appeal Decision dated 6-16-2005.

<u>Continuation of Inventory List of Enclosures</u>
<u>To Affidavit of Complaint Dated July 5, 2005</u>

11. U.S. Court of Appeals for the First Circuit Docket History Report dated 12-22-2004, reflecting the absence of receipt of a "Certificate of Appealability." Contrast the same with the enclosed 12-14-2004 previous filings of the same.

12. U.S. Court of Appeals for the First Circuit "Order dated 5-13-2005,' and "Motion to Stay Appeal" dated 5-16-2005, and then a subsequent "Motion for Leave to Withdraw Appeal" and the Court's associated Order dated 6-3-2005. Motion for Leave to Withdraw Appeal is dated 6-14-2005.

13. 12-14-2004 "Notice of previous filings with the U.S. Court of Appeals for the First Circuit, reflecting on page 1 the 12-8-2004 filing of a "Certificate of Appealability" that the Court claims they <u>did not</u> receive as demonstrated by the enclosed Docket History Report at Page 4 as (Public Note).

14. 1-28-2005 "Motion to Stay Appeal" filed in the U.S. Court of Appeals with 6-page memorandum.

15. 11-22-2004; and 11-23-2004 "Booking Reports" with Disciplinary appeals, giving rise to unlawful downgrade.

16. 2-21-2005 Cover-letter with Level-2 Grievance with 4-page summary and Removal Notice dated 11-22-2004.

17. 10-4-2005 Cover-letter to U.S. Federal District Court reflecting Affidavit of Complaint filing for "Thefty of personal funds, and misappropration of the same."

18. U.S. Federal District Court Docket History Report dated 5-11-2005, reflecting "failure to receive" memorandums described in the enclosed June 6, 2005 correspondence mentioned in number one of this Inventory History.

19. Affidavit of Complaint dated 1-12-2005 of 5-pages long, demonstrating factual claim of "Obstruction of correspondence, retaliation, harrassment, and unlawful segregtion leading to unlawful downgrade."

20. Affidavit of Complaint of 4-pages, demonstrating all the above noted claims.

Continuation of Inventory List of Enclosures
To Affidavit of Complaint Dated July 5, 2005

21. 11-19-2004 Cover-letter of 3-pages with the attached Affidavit of Complaint of 4-pages, demonstrating all the above noted claims.

22. 3-31-2005 4-page letter as part of Grievance of "Denial of access to the Courts," listed as number 3 of this Inventory List.

23. Two page accounting information.

Normand Bedford

Normand Bedford (Pro se)
P.O. Box 8273
Cranston, RI 02920

24. Also enclosed herein, is a money transfer slip dated 4-26-2005, reflecting the memorandum that was not received by the U.S. Federal District Court.

25. Also enclosed herein, are numerous duplicated request slips that were ignored. See the following.

a. Request for protective custody dated 5-26-2005.
b. Request for protective custody dated 5-28-2005.
c. Request for protective custody dated 5-30-2005.
d. Request for protective custody dated 6-5-2005.
e. Request for internal affairs interview.
f. Request for legal supplies dated 6-2-2005.
g. Request for legal material for active case dated 5-30-2005.
h. Request to be moved out of cell number 34 dated 6-3005.
i. Request for replacement of stolen property dated 7-2-2005.
j. Request for interview with SIU Bagonus dated 6-7-2005.
k. Request for return of property "Legal mail," dated 6-27-2005.